UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**GARY NIXON**,                                                    Civil Case No. 3:11-CV-01292-KI

                Petitioner,

                      OPINION AND ORDER

                v.

**J.E. THOMAS,**
Warden, FCI Sheridan,

                Respondent.


           Michelle A. Ryan
           K2 Building
           1717 NE 42nd Avenue, Suite 2104
           Portland, Oregon  97213

                Attorney for Petitioner

           S. Amanda Marshall
           United States Attorney
           District of Oregon


Page 1 - OPINION AND ORDER

Ronald K. Silver
Assistant United States Attorney
United States Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

      Attorneys for Respondent


KING, Judge:

Petitioner Gary E. Nixon, an inmate at FCI Sheridan, brings this habeas corpus action

pursuant to 28 U.S.C. § 2241.  For the reasons that follow, I deny the Petition for Writ of Habeas

Corpus and his supplemental claims.

## BACKGROUND

Petitioner is serving a sentence of 158 months for Conspiracy to Distribute and to Possess

with Intent to Distribute Cocaine Base; his projected release date is April 7, 2016.

Petitioner brought this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241

to challenge the disciplinary proceedings that resulted in a loss of good time and other privileges.

His claim arises out of the following events:

Special Investigative Services (SIS) Technician G. Martin wrote Incident Report

No. 2207765 on September 7, 2011, charging Petitioner with violations of Codes 297 (Use of the

Telephone for Abuses), 296 (Use of the Mail for Abuses), and 331A (Planning the Introduction

of Non-hazardous Contraband).

On September 7, Lieutenant A. Rodrigues delivered a copy of the Incident Report to

Petitioner.  SIS Technician Martin amended the incident report on September 8.  Lieutenant

Page 2 - OPINION AND ORDER

Rodrigues delivered it to Petitioner on the same day and read Petitioner his rights; Petitioner said

he understood his rights and declined to provide a statement.

The Incident Report charged Petitioner, inmate Claude Pierce, and inmate Antoine Evans

with conspiring to make plans to introduce contraband into FCI Sheridan.  In a "plain language"

memorandum, SIS Technician Martin explained:

- Inmates PIERCE and NIXON plan to have inmate PIERCE's girl Candace Davis buy contraband and mail it into inmate NIXON disguised as an incoming package from staff at FCI Victorville.

- Candace buys the items but does not want to go through with sending them in disguised as official government mail.

- Inmate NIXON tells her to mail the items to Antionette Johsnon [sic], friend of inmate EVANS.

- Inmate NIXON writes Antionette a letter telling her how to make the package look like it is coming from staff at FCI Victorville.  Inmate NIXON wants her to purposely leave a half opened bottle of prayer oil in the package, presumably to help cover up the smell of the tobacco hidden in Ziploc bags concealed in boxes of crackers.

- Inmate NIXON attempts to prepare R&D staff by telling them he is expecting a package of property from FCI Victorville.

- Inmate EVANS girl is in phone contact with inmate PIERCE's girl about the package of contraband.  Inmate EVANS tells Antionette to let Candace know the package is going to be mailed in.

Cortez Decl. Attach. 1, at 7.  With respect to the fourth bullet point, Petitioner's letter with

specific instructions for mailing the package was discovered when Petitioner handed his unit

officer a sealed and stamped envelope marked "legal mail."  The unit officer believed

Petitioner's behavior was suspicious and noticed the address on the envelope was not an

attorney's.  The officer checked the address by referring to Petitioner's approved contact list and running a Google search.  The address was not an attorney's office.

On September 13, the Unit Disciplinary Committee convened.  When asked about the investigation's findings, Petitioner responded, "No comment.  I will make my statement to DHO." Id. at 1.  The Committee found Petitioner guilty and referred the charges to a Discipline Hearing Officer ("DHO").  It identified the alleged violations as "Phone Abuse to Further a High Category Act/Use of the Mail for Abuses to Further High Category Act/ Introduction of Non-Hazardous Contraband." Id. at 31.  It recommended loss of good time, time in the disciplinary segregation unit, commissary restrictions, impound property for a period of time, and loss of telephone privileges.  The hearing was to be held on a date and time "[t]o be determined by DHO." Id.  Petitioner requested a staff representative and was assigned E. Duncan to assist him.  Petitioner also requested two witnesses:  Lieutenant D. Payne, who he believed could testify to policy regarding the opening of his mail, and Warden Thomas.

On October 18, DHO Daniel Cortez conducted a disciplinary hearing.  During the hearing, Petitioner stated,

> I messed up.  Technically the officer can't open the mail.  If anything he should have given it back or called me in and opened it in front of me.  The policy says you can't open it.  The only thing that got me was that letter.

Id., Attach. 2, at 1.  Petitioner also provided a written statement.

In a report issued November 2, DHO Cortez considered Petitioner's statement, the Incident Report and Investigation, a copy of a letter placed in outgoing mail by Petitioner, the statements given by Petitioner, recorded calls, inmate contact forms, emails to and from Pierce and Evans, and memoranda from SIS Technician Martin and Correctional Systems Officer J.

Brannan.  DHO Cortez also relied on an internal email to him explaining how the unit officer

came to open Petitioner's "legal mail:"

> On the night in question inmate NIXON approached the Unit 4 Officer and handed him mail which was sealed and marked "legal mail."  The Officer believed inmate NIXON was acting suspicious regarding the mail.
>
> The Officer observed the mail was not addressed to an Attorney Office as is normal.  A check of the inmates approved contact list revealed inmate NIXON has this person listed as a "friend."
>
> A google search of the address shows it to be a private residence, and not an Attorney's Office.
>
> A review of inmate NIXONs phone calls revealed he appeared to be talking about contraband coming into the institution, and the name on the letter (Antionette Johnson) was mentioned as a person involved in the conspiracy.
>
> Based on the above, the officer determined the mail was not legal mail and opened it for screening as he is required to do.  Since the content of the letter was clearly about introducing contraband into the prison the Officer turned it over to the SIS Office.
>
> The SIS Office determined the Officer had acted prudently and indeed, the SIS Office would have opened the mail had they received the letter sealed.

Cortez Decl. Att. 1, at 12.[1]

Although Petitioner had requested Lieutenant Payne testify as a witness, DHO Cortez

declined that request; the DHO could conduct research into policy.  Additionally, DHO Cortez

declined to have Warden J. Thomas testify since he had no direct knowledge of the incident.  The

DHO found Petitioner had committed the prohibited acts of Use of the Telephone for Abuses

---

[1]Petitioner believes the unit officer opened the mail before learning about the phone calls because the phone calls he made occurred August 18 through August 28, 2011.  It appears the letter was opened on August 19, 2011.

Page 5 - OPINION AND ORDER

Other Than Criminal Activity (Code 297), Use of the Mail for Abuses Other than Criminal

Activity (Code 296), and Introduction of Non-Hazardous Contraband (Planning) (Code 331A).

     As sanctions for the violations, the DHO imposed the following punishment:  disallowed

27 days of good conduct time, 30 days of disciplinary segregation, and one year loss of telephone

privileges for the Code 297 violation; disallowed an additional 14 days of good conduct time and

30 days of disciplinary segregation for the Code 296 violation; and disallowed 13 days of good

conduct time, 30 days disciplinary segregation (suspended pending 180 days of clear conduct),

and 60 days loss of commissary privileges for the Code 331A violation.

     A copy of the DHO's report was delivered to Petitioner, via inmate mail, on November 2.

FCI-Sheridan's warden issued a "Management Variable" that worked to transfer

Petitioner to a high-security prison, USP Coleman II.

     Petitioner alleges in his Petition that his due process rights were violated in the course of

the disciplinary proceeding and he disputes there is "some evidence" he violated the rules.  On

October 31, 2011, Petitioner filed a Supplement to his Petition suggesting the decision to open

his "legal mail" was a violation of his First Amendment rights and access to the court.

Respondent argues Petitioner is not entitled to relief because he failed to exhaust his

administrative remedies and because, in any event, he was provided all the process due under the

circumstances.  Contemporaneously with his reply in support of his Petition, Petitioner filed a

Supplemental Claim alleging violations of his Eighth Amendment rights, arguing that (1)

depriving him of telephone privileges for a full year is not commensurate with the charged

conduct; (2) that the Warden's issuance of a "management variable" causing Petitioner to be

transferred to another prison across the country constituted excessive punishment; and

(3) Petitioner's placement in disciplinary segregation resulted in a denial of medical treatment. Additionally, Petitioner asserts a transfer to another institution violated his Eighth Amendment rights because it resulted in inadequate medical care for his sarcoidosis and sleep apnea conditions.

## DISCUSSION

I.    <u>Exhaustion of Remedies</u>

It is well settled that federal prisoners generally must exhaust their federal administrative remedies prior to filing a habeas corpus petition under 28 U.S.C. § 2241. <u>Martinez v. Roberts</u>, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam). Although the exhaustion requirement is not jurisdictional, this court may dismiss a habeas petition for failure to exhaust administrative remedies. <u>Id.</u> Exhaustion of administrative remedies allows for development of the record, and gives the administrative agency an opportunity to correct its own errors or provide the relief requested. <u>Ruwiwat v. Smith</u>, 701 F.2d 844, 845 (9th Cir. 1983) (per curiam).

Exhaustion may be excused if the administrative remedies are inadequate, futile, or where pursuit of the administrative remedies would cause irreparable injury. <u>Laing v. Ashcroft</u>, 370 F.3d 994, 1000–01 (9th Cir. 2004); <u>United Farm Workers of Am., AFL–CIO v. Arizona Agric. Emp't. Relations Bd.</u>, 669 F.2d 1249, 1253 (9th Cir. 1982).

It is undisputed that Petitioner had not exhausted his available administrative remedies at the time he filed his Petition in this Court. He asserts in his Petition, signed one day *before* his hearing with the DHO was even held, that he requested the appropriate Administrative Remedy Appeal forms but that staff "refused to provide the Petitioner appeal/grievance forms[.]" Pet. 2. Notably, his Petition was filed nine days before a copy of the DHO's report was delivered to him.

Nevertheless, in his Supplement, dated October 25, 2011, seven days after his hearing, he asserts he completed the necessary form but staff lost it. He filed another, which staff sent back to him.

Whether because Petitioner attempted to exhaust and was thwarted by staff, or simply because time has passed and he is now incarcerated at a different prison, it is obvious that requiring exhaustion at this juncture would be futile. I excuse the exhaustion requirement in the circumstances of this case in order to reach the merits which, as I set out in detail below, results in denial of the Petition. Accordingly, exhaustion is excused in the circumstances of this case.

II.    Procedural Due Process

Petitioner challenges the notice provided to him by the Unit Disciplinary Committee, which indicated that a hearing with a DHO would be set at a time "[t]o be determined by DHO." Cortez Decl. Attach. 1, at 31. He suggests he had inadequate notice of the charges because the charging instrument identified four counts, but he was only found guilty of three. Additionally, in his counseled Reply to the Respondent's response, he asserts he was not permitted to call the witnesses he asked to call–Lieutenant Payne and Warden Thomas.

It is well settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) 24-hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from a staff

representative; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action.  Id. at 563–67.

As an initial matter, Petitioner was provided notice of the *charges* well over 24 hours in advance of the hearing, and that is all that is required by Wolff and the due process clause.  With respect to his challenge to the charging instrument, Petitioner was warned of all possible charges and provided with the facts supporting the charges; he does not argue or demonstrate how he was prejudiced by the DHO's formation of the charges as three violations from the four identified by the Unit Disciplinary Committee.

As for Petitioner's assertion that he was not permitted to call the witnesses he asked for, the government explains these "two senior staff members were not interviewed because of lack of personal involvement or knowledge of the incident."  Resp't's Resp. 13.  Similarly, the DHO explained in his written decision that he could conduct any research required into applicable policies, negating the need for Lieutenant Payne's testimony, and that Warden Thomas had no direct knowledge of the incident.  Petitioner refutes this explanation, asserting both witnesses had personal knowledge of the policies relevant to the unit officer's opening of his "legal mail" which precipitated the investigation.  He refers to a response from prison staff explaining the policies for handling inmate legal mail:  staff receive the legal mail directly from the prisoner, staff confirm the inmate delivering the letter is the same inmate reflected in the return address, and the mail is then hand carried to the mail room.  See Petitioner's Ex. 103.  Petitioner reads into this exhibit a prohibition on unit officers from opening an envelope marked "legal mail."

It is well-established that where prison officials do not allow witnesses to testify at a hearing, they must justify such a decision on a case-by-case basis.  Ponte v. Real, 471 U.S. 491,

497 (1985).  Nevertheless, the Supreme Court has concluded that due process does not require a

prison to allow an inmate to confront and cross-examine witnesses.  Baxter v. Palmigiano, 425

U.S. 308, 321-23 (1976) (useful for the "disciplinary committee [to] state its reason for refusing

to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in

individual cases"); Wolff, 418 U.S. at 569.  The DHO's decision was in accordance with BOP

policy, which provides that the DHO, in his discretion, may decline to allow the participation of a

witness if it would jeopardize institution security or if the witness "would present repetitive

evidence."  28 CFR § 541.8 (f)(3) (eff. June 20, 2011); see also Dep't. of Justice, BOP, Program

Statement 5270.09:  Inmate Discipline Program 31 (eff. Aug. 1, 2011), available at

www.bop.gov/policy/progstat/5270_009.pdf.

   The DHO adequately explained his reasons for not calling Lieutenant Payne and Warden

Thomas–which permissibly were for reasons other than security issues.  Petitioner asserts unit

officers did not have the power to open mail, but his exhibit 103 describes how legal mail is

"normally" delivered and does not state that a unit officer is prohibited from opening it.

Specifically, where a scan of the envelope marked "legal mail" revealed that the addressee was

not an attorney, and where a simple search of Petitioner's contact list revealed the addressee was

identified as a "friend," the mail was not "legal mail" and was not entitled to the protections of

such mail.  See 28 C.F.R. § 540.19(d) (inmate "shall" address legal mail to an attorney or related

representative).  Pursuant to policy, general, outgoing mail may be opened in a medium or high

security level institution and may be inspected by staff.  28 C.F.R. § 540.14(c)(2).  Since

Petitioner's outgoing mail was not properly categorized as "legal mail," the unit officer had

authority to open the envelope and inspect the letter.  No testimony about prison policies was

necessary.  See Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir. 1989) (multiple inmates can be

precluded from testifying repetitively and cumulatively where "witnesses would not provide any

pertinent new information"); Ward v. Johnson, 690 F.2d 1098, 1112-13 (4th Cir. 1982) (DHO

may disallow witness for irrelevance or cumulativeness); Chesson v. Jaquez, 986 F.2d 363, 366

(10th Cir. 1993) (officer's testimony properly disallowed where plaintiff failed to show how the

testimony would have supported his argument).

      Petitioner fails to prove a due process violation.

III.    Substantive Due Process

      Petitioner challenges the charges, arguing there is insufficient evidence to support them.

He argues there was nothing wrong with the telephone call for Davis to order perfume and shoes

and mail them to someone in another state and that, because no box or package arrived

containing contraband, the charges hold no water.  Finally, he asserts the Use of the Telephone

(Code 297) charge cannot be sustained because it was not in furtherance of a high category act.

      Substantive due process is satisfied in a prison disciplinary procedure if there is "some

evidence" to show the inmate committed the offense in question.  Superintendent v. Hill, 472

U.S. 445, 455 (1985).  "Ascertaining whether this standard is satisfied does not require

examination of the entire record, independent assessment of the credibility of witnesses or

weighing of the evidence."  Id. at 455–56.  Rather, "the relevant question is whether there is any

evidence in the record that could support the conclusion reached by the disciplinary board."  Id.

      Here, the evidence reflects that Pierce received an email from "Mia Pierce" containing the

statement, "The main ingredients I both the big 4 pack ones not the individual packs.  I hope the

dish comes out right."  Cortez Decl. Attach. 2, at 5.  Pierce responded with:  "u might want to

check at midkay's or the swap meat for the smell good if you can't find it forget it and put some

of yours." Id.

Pierce then repeatedly called Candace Davis, a person identified on his contact list as his

spouse, and engaged in the following conversations:

> On August 15, 2011, inmate Pierce contacted (971) 533 [redacted] (Candace Davis-Spouse). The person called states, "I've only been able to find one pair of shoes. I can't find the perfume you wanted. Inmate Pierce replies, "O.K. just get the one pair then. Will you be able to take care of it tomorrow?" The person replied, "I'll try."
>
> On August 16, 2011, inmate Pierce contacted (971) 533 [redacted]. Inmate Pierce stated, "I don't know what the problem is. Did you get everything you were supposed to?" The person called replies, "Yes." Pierce asks: "What is the problem?" The person replies "It didn't look right." Inmate Pierce states: "Well, just hold on to it."
>
> On August 17, 2011, inmate Pierce contacted (971) 533 [redacted]. Inmate Pierce stated: "I'm gonna give you the Lawyer's address and you could put the motion in there. You could send it to them. You send it to my cuddy people." The person called replies, "What people?" Inmate Pierce states: "My cuddy. I'm gonna give you an address and you can put all my stuff in there and send it to somebody else." The person called replies, "Who?" Pierce states, "Listen, another fucking state. Don't get to questioning me."

Cortez Decl. Att. 2, at 4-5 (some punctuation corrected for readability).

At this point, Pierce ran out of phone credits. On August 18, Petitioner called Candace

Davis, saying, "I'm gonna give you an address. [D]id you get everything together? You still got

everything?" The person called replied, "Yes." Petitioner then told her to send "it" to Antionette

Johnson "ASAP." Id. The next day, Petitioner called Candace Davis and asked her if she had "a

chance to do that?" She said, "Yes." Id. at 5.

That day, Petitioner attempted to mail a letter marked "legal mail," but addressed to

Antionette Johnson, detailing how the contents of the box should look. For example, "now you

Page 12 - OPINION AND ORDER

have 5 box's of crackers[;] those boxs should not look like they been open." Id., Attach. 2, at 10-11.  He instructed her to place the contents in "glady seal bags" to ensure "there is no smell" and crazy glue the boxes closed.  He instructed her to use a 16x19 box, send the package via UPS ground, put Petitioner's name on the outside of the box and use FCI Victorville's address as the return address.  He suggested she put a half-open bottle of prayer oil in the box "so the box smell." Id. at 11.  This letter was never sent; the unit officer believed Petitioner was acting suspiciously, confirmed that the addressee was listed as a friend of Petitioner's on his contact list, and that the address did not belong to an attorney.  Believing the letter was not legal mail, the officer opened it and turned it over to the SIS office.

In the meantime, inmate Evans began emailing Antionette Johnson, a person identified as a friend on his contact list, discussing a "gift that was coming" her way. Id., Attach. 2, at 5.  She reported receiving the a "big azz box" on August 23 and asked what to do with it.  Evans instructed her to hold onto it.

On August 23, Petitioner went to the Receiving and Discharge Unit asking if he had received his property from FCI Victorville yet, indicating that he had spoken with his counselor about the property and that it was being sent.

On August 29, Antionette Johnson emailed Evans saying she had received a couple of phone calls yesterday and was told to "read the book." Id. at 6.  Evans apologized for "in and out communication" and said he was going to "have my other patna call you and run the script[.]" Id.

On September 5, Petitioner called Candace Davis, saying, "What's up with the cousin out of town?  Did she ever get them books and send them to me?"  Candace Davis replied, "No, I

Page 13 - OPINION AND ORDER

haven't even heard from her." Id. at 5.  In the meantime, Evans emailed Antionette Johnson that,

"[T]he window of opportunity is closing on that box of instructions you got . . . at first I wanted

to wait till I saw you–but then my patna was to call you and tell you my thoughts . . . don't know

if he ever called cause you never mentioned ms. pee getting a call." Id. at 6.  The next day,

Evans gave Antionette Johnson the phone number for Candace Davis.

On September 6, more than two weeks after his last contact with her, Petitioner called

and informed Candace Davis, "Let her know as soon as she take care of that I'm gonna send you

$500 so you can send it to her" and "I need you on her.  I need that ASAP." Id. at 5.  Finally,

Petitioner admitted the charges at the hearing.

This evidence is "some evidence" supporting the DHO's conclusion that Petitioner "used

the Inmate Telephone System and the outgoing mail in order to further an attempt with other

inmates of FCI Sheridan to introduce contraband into FCI Sheridan." Id. at 7.  The evidence is

sufficient to sustain the finding that Petitioner committed the prohibited acts of Use of the

Telephone for Abuses Other Than Criminal Activity (Code 297), Use of the Mail for Abuses

Other Than Criminal Activity (Code 296), and Introduction of Non-Hazardous Contraband

(Planning) (Code 331A).  Finally, the high category prohibited act supporting the Use of the

Telephone charges is supported by the Code 296 act–directing others to send mail through

unauthorized means.

The petition is denied with respect to the claim that there was insufficient evidence to

support the DHO's decision.

Page 14 - OPINION AND ORDER

IV.   First Amendment

Petitioner asserts staff violated his First Amendment right to send mail when the unit

officer opened his letter marked "legal mail."  Prisoners have a First Amendment right to send

and receive mail.  Pell v. Procunier, 417 U.S. 817, 822 (1974).  However, a prisoner's First

Amendment rights are limited by the Bureau of Prisons' "legitimate penological interests."

Turner v. Safley. 482 U.S. 78, 89 (1987).

As I indicated above, the unit officer was able to simply scan the envelope and learn that

the addressee was not an attorney, and then read Petitioner's contact list to learn the addressee

was identified as a "friend;" accordingly, the mail was not "legal mail" and was not entitled to

the protections of such mail.  See  28 C.F.R. § 540.19(d) (inmate "shall" address legal mail to an

attorney or related representative).  The unit officer was permitted to open and inspect the

outgoing mail since Petitioner was housed in a medium security level institution.  28 C.F.R. §

540.14(c)(2); Thornburgh v. Abbott, 490 U.S. 401, 412 (1989) (prison officials may restrict

dangerous correspondence such as plans relating to ongoing criminal activity).  Respondent's

actions did not violate Petitioner's First Amendment rights.

V.   Eighth Amendment

Petitioner asserts that the one-year prohibition on his use of a telephone constituted cruel

and unusual punishment.  In addition, he asserts that the issuance of the "Management Variable,"

which served to move him from FCI Sheridan to USP Coleman II, also constituted cruel and

unusual punishment, and resulted in a deprivation of his right to proper medical treatment.

A.    Telephone Use

Petitioner argues banning him from using the telephone for one year violates the Eighth Amendment because he has been prevented from communicating with his immediate family. Petitioner disputes that the sanction is at all related to a legitimate governmental interest, suggesting telephone contact with family is a rehabilitative mechanism.  He reports that his family lives in the Southeastern part of the country, that many of them suffer from medical conditions keeping them from traveling, and that he was unable to call them and inform them of his own serious medical condition.

Depriving a prisoner of phone calls for a year does not violate the Eighth Amendment. See Overton, 539 U.S. at 136–37 (two-year ban on visits to inmates who had committed two or more substance-abuse violations does not violate the Eighth Amendment); Toussant v. McCarthy, 597 F. Supp. 1388, 1413 (N.D. Cal. 1984) ("Plaintiffs cite to no authority for the assertion that the complete denial to inmate of access to telephone violates contemporary standards of decency inherent in the Eighth Amendment"), aff'd in part, rev'd and remanded in part, 801 F.2d 1080 (9th Cir. 1986); Williams v. ICC Committee, 812 F. Supp. 1029, 1034 (N.D. Cal. 1992) (same).  Additionally, the DHO had a basis for depriving Petitioner of telephone privileges since his role in the charged conduct involved talking on the phone with Pierce's spouse to persuade her to participate in mailing contraband to the prison.  As the DHO explained,

> The use of a telephone while incarcerated is a privilege, not a right.  Using the Inmate Telephone System to contact an outside source to coordinate the introduction of contraband is prohibited and will not be tolerated.  The sanctions . . . are imposed to stress upon inmate Nixon that Abuse of the Telephone For Other Than Criminal Activity will result in punishment.

Cortez Decl. Attach. 2, at 8.

Page 16 - OPINION AND ORDER

I have also considered, and rejected, the possibility that the telephone restriction is a punishment so disproportionate to Petitioner's prison infraction that it violates the proportionality principle imposed by the Eighth Amendment.  See Ewing v. California, 538 U.S. 11, 23 (2003) (Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime").  The punishment imposed by Respondent is not sufficiently harmful to constitute a constitutional violation.

B.    Medical Treatment

Petitioner reports that he suffers from pulmonary sarcoidosis, characterized by fatigue, coughing, wheezing, chest pain, and other skin-related symptoms, that he was taken to the hospital, where a doctor recommended he see a pulmonary specialist, and that "[d]espite these recommendations, the prison officials at Sheridan did not have him see the specialist and instead had him transferred to a different prison" across the country.  Pet'r's. Reply 12.

Petitioner's assertion is not supported by the timing of events.  Warden Thomas made his request that Petitioner be transferred to a high security prison on December 19, 2011, before Petitioner was treated at the Willamette Valley Medical Center on February 14, 2012. Specifically, Warden Thomas sought a "Request for Transfer/Application of Management Variable" to transfer Petitioner to an appropriate high level facility for close supervision because Petitioner was the mastermind of an attempt to introduce tobacco products into FCI Sheridan and because he has on several occasions attempted to manipulate staff.  Pet'r's. Ex. 101.  Petitioner's transfer to a more secure prison did not violate his rights under the Eighth Amendment.  See Hassain v. Johnson, 790 F.2d 1420, 1420 (9th Cir. 1986) (per curiam) (citing Bono v. Saxbe, 620 F.2d 609, 611 (7th Cir. 1980) (prison may change conditions of confinement for administrative

reasons, so long as the conditions do not involve cruel and unusual punishment)); <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n.9 (1976) (no constitutional right to a particular custody or security classification).  Furthermore, a decision by the prison to transfer Petitioner is supported by Petitioner's role in the scheme and was sought before his health problems required a consultation with a pulmonologist.  Any problem Petitioner is having obtaining medical care from USP Coleman II is not the proper subject of this habeas petition.

## CONCLUSION

Based on the foregoing, the Petition for Writ of Habeas Corpus [2], the Supplemental Claim in Support of First Amended Petition for Writ of Habeas Corpus [6], and the Second Supplemental Claim in Support of First Amended Petition for Writ of Habeas Corpus [34] are denied and the proceeding is dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____30th_____ day of November, 2012.


　_/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 18 - OPINION AND ORDER